## J. M. LEE, *Treasurer*, v. FRANK ROBERTS.

1. LIQUOR LICENSE.  Liquor licenses, as well as taxes and other public charges, are payable in money, unless provision is made by statute for their liquidation in some other manner, or by some other means.

2. STATUTES—*Construction of.*  A statute must be construed in accordance with the legislative intent, and to ascertain this intent, the various provisions of the legislative enactments must be construed together.

3. SAME—*Literal Interpretation of.*  A literal interpretation will not be given to the language used in a part of a section of a statute when such construction would conflict with another provision of the same section, and with other provisions of the statute.

4. SAME—*Literal Interpretation*  Nor will a literal interpretation be given to language in a statute when such interpretation would operate unjustly or lead to absurd results.

5. SAME—*Construction of—Payment of Liquor License.*  The section of the statute relating to the duties of the county treasurer, which provides that whenever he receives any money, warrants or orders on account of licenses, fines or any other account, except taxes charged on the tax roll, shall make out duplicate receipts therefor, one of which shall be deposited with the county clerk, and which provides that the treasurer shall then enter the same in his cash book as cash received for taxes, does not, when construed in connection with other provisions of the statute making liquor licenses payable in dollars,

and providing for the registration and payment of county warrants in the order in which they are presented to the county treasurer, and providing for the use of such warrants in payment of taxes and the redeeming of such warrants, either by payment or by their receipt for taxes, require the county treasurer to receive county warrants in payment of liquor licenses when there are many thousand dollars in outstanding warrants of the county which have precedence in order of payment over those tendered, and when those tendered cannot be received as cash.

*Error from the District Court of Kingfisher County.*

Defendant in error, who is a saloon keeper in the city of Kingfisher, brought his action in *mandamus* in the district court of Kingfisher county, on January 12, 1895, to compel the plaintiff in error, the county treasurer of the county, to accept certain county warrants in payment of his liquor license. An alternative writ of *mandamus* was issued, to which the county treasurer made return and answer, alleging in substance that he did not receive the warrants in payment of the liquor license of the plaintiff because it was the duty of the plaintiff to make payment of his license, not in warrants, but in money, and because there were several thousand of the county warrants duly registered and outstanding, and which were entitled to payment ahead of those tendered by the plaintiff for the payment of his liquor license, and that the amount of warrants registered ahead of those which the plaintiff tendered, and which were entitled to payment before those which the plaintiff tendered, amounted to more than twenty thousand dollars. To this answer a demurrer was sustained and judgment rendered requiring the county treasurer to receive the warrants offered by plaintiff in payment of his liquor license in the sum of two hundred dollars, from which judgment the defendant appeals.

*J. B. Moffett, County Attorney*, for plaintiff in error.

*Hobbs & Kane*, for defendant in error.

The opinion of the court was delivered by

BIERER, J.: This case presents one question, and that is, whether Roberts is entitled to make payment of his liquor license, and whether the county treasurer was required to receive the same, in outstanding warrants of said county, and which had been registered and not paid for want of funds, and where there were many thousand dollars in amount of other county warrants outstanding and entitled to payment in advance of those tendered.

It is claimed by Roberts that, under the law, he can make payment of his liquor license in such county warrants, while the county treasurer contends that such license is payable only in cash, or in county warrants, which are equivalent to cash.

Section 3141, of the statutes, provides that a liquor seller is entitled to a county license to engage in such traffic upon doing certain things, and "upon payment into the county treasury the sum of two hundred dollars for each license." This language is equivalent to saying that the sum of two hundred dollars in money must be paid as a condition precedent to the procuring of a license, and there would be no doubt upon the question, were it not for the language contained in § 5639, which is as follows: "Whenever the treasurer receives any money, warrants or orders on account of licenses, fines or any other account, except taxes charged on the tax roll, he shall make out and deliver to the person paying the same, duplicate receipts, one of which receipts said person shall forthwith deposit with the county clerk, in order that the treasurer may be charged with the amount thereof. The treasurer shall then enter the same in his cash book, as in case of money received for taxes, but in a separate and distinct series of numbers of receipts issued therefor; and no person shall receive such license or be discharged from obligation by reason of such

fine on account until he shall have so delivered such duplicate receipt to the county clerk, and the treasurer shall so inform the person making the payment at the time of payment."

It is the language of this latter section that is the cause of this controversy, and without it, undoubtedly, there would be no question for dispute, and there would be no contention but what this license charge . must be paid in money. Public charges, such as taxes, are payable in money unless some other provision is made by statute. (Cooley on Taxation, page 12; *Amenia v. Stanford*, 6 Johns. 92; *Judd v. Driver*, 1 Kan. 455.) And this rule is as applicable to licenses as to taxes.

In the case of *Blake v. Commissioners of Johnson County*, 18 Kan. 266, the supreme court of that state, in a decision rendered by Justice Brewer, held that, under two sections of the statute, one providing that all fines, penalties and forfeitures should be paid into the county treasury, to be applied to the support of the common schools, and the other, requiring that the county treasurer should collect all moneys due for school purposes from fines, forfeitures, etc., the county treasurer was directed to collect a judgment of forfeiture, in money, and said that the treasurer, "having authority to collect, if he receive anything other than money, in full satisfaction and discharge of the judgment, he renders himself liable for the amount thereof." In this case the bond of the county treasurer, who had received scrip instead of money, was held liable for the amount of the judgment.

It cannot be disputed that, in the absence of a statute clearly making other provisions, taxes, fines, forfeitures, licenses and similar charges due the public, are payable in money, and the language of the liquor license law is clearly in accord with this general proposition, and, manifestly, intends that the license shall be paid in money, and the liquor license charge

must be so paid, unless the legislature has clearly made other provision for its payment. Does § 5639, when read and construed with all the other provisions of the revenue law, show clearly a different purpose in the mind of the legislature with reference to the manner of the payment of liquor licenses, than that expressed by their language when legislating upon that particular subject? That its language is not in harmony with a purpose that liquor licenses shall always be payable in money. is quite apparent, but when is it that they may be received by the treasurer in warrants? Is it all the time, or only when he may receive them as cash. because they are entitled to be immediately paid in cash?

In answering the question, we must arrive at the legislative intent, for that is the true meaning of all statutes, and to do this its various provisions must be read and construed together. (*Sampson v. Clark*, 2 Okla. Rep. 82.)

Section 5633 of the revenue law, provides as follows:

"Territorial warrants are receivable for the amount payable into the territorial treasury on account of the general territorial tax, the county warrants are receivable at the treasury of the proper county, for the amount of county tax payable into the county treasury, except when otherwise provided by law; and city warrants shall be receivable for city taxes; and school warrants shall be received for school taxes in the district where such warrants are issued; but United States treasury notes, or their equivalent, only, are receivable for such taxes as are, or may be, required by law to be paid in cash."

This is the provision of the statute which provides for the use of warrants as a medium of payment, and it only provides for their use in liquidation of taxes. The language is specific and authorizes their use only in payment of taxes, and not in liquidation of any other account or charge due to the public, and the

county warrants, under its terms, may be used in pay-
ment of the county taxes, except when otherwise pro-
vided by law, and this exception does not indicate
that it was made in favor of, or in anticipation of,
extending the cases in which warrants could be used
as cash in discharge of public charges due the county,
but it was a limitation upon the general terms of the
section giving the right to use warrants in payment of
county taxes, and this limitation clearly appears in
the latter lines of the section which makes United
States treasury notes, or their equivalent, the only
medium for the payment of such taxes as may be pay-
able only in cash. The exception referred to in the
language with reference to the use of county warrants
as payment for county taxes was evidently intended
to provide for cases in which they could not be so used,
and a limitation upon their use rather than to permit
other and addittional cases where they could be used.
Had it been the intention of the legislature to author-
ize the use of all county warrants in payment of
licenses, it would have been very easy indeed for the
legislature to have expressed such an intention in
framing the language of this section. It was in en-
acting this section that the legislture had particularly
in mind the matter of making provision for the use of
warrants instead of money in making payments to the
public, and they authorize them to be used only when
paying taxes. Section 5639 does not direct that the
treasurer shall receive warrants on account licenses,
and such a construction would not only make the sec-
tion conflict with the terms used in the liquor license
law and be an enlargement upon the general use of
warrants and out of harmony with § 5633, but would
give to it a meaning not expressed by any of the
language when considered alone and when used with-
out relation to any other part of the statute. That
warrants must be received in payment of liquor

licenses could only be drawn by inference from this language, and that they shall be so received is nowhere stated. The legislature, when framing this language, was not legislating upon the question of the use of warrants in payment, but was making a provision for the treasurers, giving a receipt when receiving payment for licences, etc. It simply makes a direction as to what the treasurer shall do when he receives money, warrants or orders on account of licences or other accounts, and directs that he shall issue his duplicate receipt therefor, one of which receipts the person receiving the same shall deposit with the county clerk. It then provides that, "the treasurer shall then enter the same in his cash book as in case of money received for taxes," clearly showing that the legislature intended, not that the treasurer must at all times receive warrants in payment of licence dues, but that he might receive warrants on account of licences whenever he could enter the same as money coming into the county treasury, and if he could not receive the same as money, of course he could not, under this section, be required to accept such warrants as could not be held equivalent to money. Under this section, whatever he receives in payment of licences, fines or any other account, "except taxes charged on the tax roll," he shall receive as money, and be charged for as money. And in § 5683, when making his settlement, he is required "to pay over all money with which he may stand charged," and on his failure so to do suit must be instituted against the treasurer and his sureties; and by the next succeeding section, the board of county commissioners are given power, when suit is commenced, to remove the treasurer from office and to appoint a person to fill the vacancy thereby created. We cannot place upon this sectinon of the statute such a construction as, taking it with other sections, would require the

county treasurer to receive these warrants, and then, when they are not cash and cannot be equivalent to cash, to account for them to the county in cash, and to make payment in cash in lieu thereof. He cannot be required to receive that which he cannot be permitted to pay, and as he must account for all payments which are made for licenses, in money the same as "money received for taxes," and as these warrants are not such as can be paid in cash, because there are many thousands of others which have been registered as provided by law and are entitled to priority in payment over them, the treasurer is not bound to receive them in place of money. It was evidently the intention of the legislature that the county treasurer might receive county warrants in payment of licences whenever the warrants tendered were payable in cash out of the county treasury, and whenever the treasurer could charge himself with them as cash, and account for the cash by producing in its stead warrants which were entitled to payment in cash.

A consideration of § 5638 shows also that the legislature had some particular purpose in making a separate provision for the treasurer receipting for money, or its equivalent being received, on account of licenses, fines or other accounts, except taxes charged on the tax roll, for otherwise there could have been no reason whatever for enacting § 5639. If we are to take the language of § 5639 to mean that the treasurer must receive any or all county warrants tendered on account of licenses, then there is no reason whatever for this section being contained in the statute book, for § 5638 provides very specifically for the treasurer keeping a cash book, and for his entry therein of all money received, specifying the purpose and the details of its receipt, and the account on which it is received, and also provides that in the same account, in separate columns, shall be

8

entered the amount paid in warrants, orders or receipts, keeping the accounts of moneys, warrants and orders received separate from each other, and it provides that he "shall keep his account of money received for and on account of taxes levied separate and distinct from moneys received on any other account." This section is specific, and makes, in the most complete detail, provision for the keeping of the account both of warrants and of moneys received, and if it had been intended by the legislature that warrants should be received in payment of licenses on an equality with those receivable in payment of taxes, it would, no doubt, also have been provided for in this section, and § 5639 would have been omitted, for it would have been entirely unnecessary for the legislature to have made provision for receiving and accounting for warrants, as they did do, if warrants are to be received in payment of licenses the same as in payment of taxes. We cannot suppose that the legislature was engaged in making separate provisions for receipting for the same kind of warrants which were to be receivable on an equal footing for the two different purposes. The provision of § 5639, that whenever the treasurer receives warrants in payment of licenses he shall charge himself as if he had received cash, is consistent only with the interpretation that the legislature meant to establish different conditions under which warrants might be received in liquidation of license charges than when received in payment of taxes, and is not compatable with any other understanding than that what he does receive must be equivalent to cash; and whatever he does receive he shall be charged for as cash; and therefore warrants would only be entitled to be received in payment of licenses when they were interchargeable with cash in the county treasury, so that the charge against the treasurer for the receipt of the license

would be balanced by the payment of the warrant, and this could not be done unless the warrant was entitled to payment in its order of registration.

There are numerous other sections of the statute which make provision for the county treasurer receiving warrants in payment, and none of them provide for their being so received in payment of anything else than taxes. Section 5675 provides for the treasurer keeping a warrant book, in which he shall enter territorial, county, road or other warrants received in payment of taxes. Section 5682 provides that when a person desiring to pay taxes shall present a county order to the treasurer in payment of such tax, which shall exceed the amount of the tax, the treasurer shall endorse on the back of the order the amount paid. The legislature has also made specific provision for the redeeming of warrants in § 5681, and their redemption is provided for by this section in only one of two ways, that is where they are received in payment of a tax, or when such warrants are paid by the county treasurer.

The numerous sections of the statute all repel the idea that the legislature intended that county warrants should be received by the county treasurer in payment of a liquor license, except when they could be received as cash, and we cannot believe that the language of § 5639 was intended to make provision for the payment of such licenses in any other kind of county warrants. The language of the section referring to the use of county warrants as payment of public charges does not say so, and the other provisions of the same section, as well as all the other sections, repel the idea, and such a construction would make this section conflict with the plain and manifest provisions of the other sections of the statute. We do not think a literal interpretation of the language used would give the section the meaning contended

for by counsel for defendant in error, but if it would, then it cannot be given this literal interpretation, for that would make the section out of harmony with the other provisions of the law, and "when the provisions of a law are inconsistent and contradictory to each other, or a literal construction of a single section would conflict with every other and with the entire scope and manifest intent of the act, it is the duty of the court, if it be possible, to harmonize the various provisions, and to effect this it may be necessary to depart from a literal construction of one or more sections." (*Rosenblatt v. Heman*, 70 Mo. 441.) Such a construction would operate unjustly and oppressively upon the county treasurer, and a literal interpretation cannot be given to a statute when it would operate unjustly and lead to absurd results. (*Brown v. Woods*, 2 Okla. Rep. 601; Sutherland on Stat. Const. § 324.)

This license was payable in money, not only as we have seen by virtue of the general law, but by the plain expression of our statute, and we cannot accept the language of § 5639 as expressing an intention on the part of the legislature to change the other plain provisions of the law, excepting when the warrant could be received as equivalent to cash.

Holding these views, the court erred in sustaining the demurrer to the defendant's answer below, and the judgment of the court below must be reversed with directions to proceed in accordance with the views here expressed.

All the Justices concurring except Justice McAtee, not sitting.